519 So.2d 1042 (1988)
Stanley W. EPSTEIN and Marjorie Epstein Massing, Appellants,
v.
Leonard EPSTEIN, City National Bank of Miami, a National Banking Association, and City National Bank of Miami, Trustee under the Will of Ben Epstein, Appellees.
Nos. 86-102, 86-103, 86-606 and 86-2205.
District Court of Appeal of Florida, Third District.
January 19, 1988.
Rehearing Denied March 2, 1988.
Rehearing Denied March 8, 1988.
*1043 Joseph Z. Fleming, Miami, for appellants.
Fowler, White, Burnett, Hurley, Banick & Strickroot and Douglas C. Broeker, Miami, and Clark & Stant and Thomas R. Frantz, Virginia Beach, Va., for appellee Leonard Epstein.
Sherman & Fischman and Bruce D. Fischman, Miami, for appellee City Nat. Bank of Miami.
Valdes-Fauli, Cobb & Petrey and Jonathan L. Gaines and Wilfredo A. Rodiguez, Miami, for appellee City Nat. Bank of Miami.
Before BASKIN, DANIEL S. PEARSON and FERGUSON, JJ.
PER CURIAM.
The parties to this long-time dispute over a trust are a son and daughter of the deceased settlor as plaintiffs and another son and the trustee bank as defendants. The plaintiffs appeal from judgments which, inter alia, reject their complaint for an accounting, approve a sale of the trust to the defendant brother at a value fixed by his expert witness, and find that there was no breach of fiduciary obligations.
Leonard Epstein, a defendant, operated the very successful Southland Corporation on a fifty-fifty ownership basis with his father for many years until the elder Mr. Epstein died in 1961. Since 1961 Leonard has continued to run Southland, which manufactures gaskets for the automobile industry, first as its president and now as chairman. Leonard's father, by a will, left his fifty percent of Southland's stock in a trust which provided that the stock would remain in the trust with the income to go to the children and the principal to the grandchildren. Leonard was trustee of the estate until the plaintiffs filed a motion for his removal based on allegations of improper conduct. Leonard resigned and defendant City National Bank was appointed trustee.
Two separate actions, one against Leonard Epstein and another against the bank, were brought by the plaintiffs. The action against Leonard sought an accounting based on allegations that the value of Southland's stock in the trust was artificially depressed and its actual earnings understated because of excessive expenditures by Leonard, as chairman, and his son Barry Epstein, as president, in the running of Southland. It is alleged also that a false representation by Leonard to appraisers that the stock in trust represented only a minority forty-five percent ownership interest in Southland affected the valuation of the stock.
In the action against the bank it was alleged that the bank breached its fiduciary obligations by failing to require accountings by Leonard Epstein, in joining Leonard in opposing the plaintiffs' discovery demands, and by permitting unnecessary loans against the trust which required the bank as a lender to sue itself as trustee and forced a sale of the stock at a deflated value to Leonard's benefit as purchaser. It is alleged also that the court should not have denied plaintiffs' timely demand for a jury trial or stricken its prayer for punitive damages.
We reverse and remand for a new trial for the following reasons.
Where materials sought by a party would appear to be relevant to the subject matter of the pending action, it is an abuse of discretion to deny discovery. Orlowitz v. Orlowitz, 199 So.2d 97 (Fla. 1967). It was alleged that Leonard and Barry Epstein had formed a new partnership, operating out of Southland's facility, which leased trucks, computer equipment and a jet aircraft to Southland as its exclusive customer. It was further alleged, or shown, that Southland had started a new injection molding process in connection with the business. Discovery as to the finances of both ventures, which the court denied, was quite relevant to the subject matter of this case. Bystrom v. Whitman, 488 So.2d 520 (Fla. 1986).
The misrepresentation to the defendants' appraiser, whose testimony was accepted over that of plaintiffs' expert, that the stock in trust represented a forty-five percent rather than a fifty percent *1044 interest in Southland Corporation, was significant to the valuation issue.[1] It is true, as appellees argue, that a fifty percent interest is not a controlling interest, but it is also true that a fifty percent interest is not a minority interest. There is no support by evidence or reason for appellees' suggestion that a "deadlocking" interest has no greater value than a minority interest.
Because additional discovery could, and most likely would require an accounting, the final judgment for the defendant trustee must also be reversed. Furthermore, no attorneys' fees should have been awarded the trustee for defending against the claim because it appears from the record, without dispute, that the actions of the plaintiffs caused the value of the trust to be fixed at approximately $1.6 million  more than twice the amount Leonard Epstein sought to pay.
No error is demonstrated in the trial court's denial of the plaintiffs' untimely demand for a jury trial or the striking of the claim for punitive damages. However, in light of the requirement for a new trial, and in view of the policy of allowing liberal amendment of pleadings and the constitutional import attached to the right of trial by jury, the trial court should reconsider plaintiffs' demand for a jury trial and exercise its discretion accordingly in applying Florida Rule of Civil Procedure 1.430(d). See Messana v. Maule Indus., 50 So.2d 874 (Fla. 1951) (in promulgating rule there was no intent to deprive anyone of a jury trial, even where possible).
Reversed and remanded for a new trial.
NOTES
[1] The defendants' expert fixed the value of Southland's stock in trust at $1,920 per share as of December 31, 1984, for a total of $1.584 million. Approval was given by the court for the sale of two-thirds of the trust to Leonard Epstein at that price per share.

Plaintiffs' expert appraiser, also a "big 8" accountant, based on a "limited scope valuation", fixed the value of fifty percent of the outstanding shares of Southland at $7 to $9 million, or a per share value of $7,684 to $9,973. The scope was limited in accordance with the limitation on discovery.